IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRODUCT SOURCE INTERNATIONAL, LLC, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 15-8704 (JBS/JS) |
| v. | |
| FOREMOST SIGNATURE INSURANCE COMPANY, MARYLAND CASUALTY COMPANY, and FARMER'S INSURANCE COMPANY, | **OPINION** |
| Defendants. | |

APPEARANCES:

Anthony J. DiMarino III, Esq.
Emmett Stephan Collazo, Esq.
A.J. DiMarino, P.C.
41 Grove Street
Haddonfield, NJ 08033
     -and-
Todd Jason Leon, Esq.
Hill Wallack
202 Carnegie Center
CN 5226
Princeton, NJ 08543
     Attorneys for Plaintiff

Claudia Daniela Codruz, Esq.
Traub Lieberman Straus & Shrewsberry LLP
322 Route 35 South
Red Bank, NJ 07701
     Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

In this case, Plaintiff Product Source International, LLC seeks a declaratory judgment that Defendants Foremost Signature Insurance Company, Maryland Casualty Company, and Farmer's Insurance Company, with whom Plaintiff holds commercial general liability insurance policies, collectively owe a duty to defend and indemnify Plaintiff in a trademark infringement suit in the United States District Court for the Eastern District of Virginia. Defendants seek to dismiss Plaintiff's claims, asserting that its requests for declaratory judgment are moot and that it has failed to state a claim for relief for insurers' bad faith. For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

**II.   BACKGROUND**

The Court accepts as true for the purposes of the instant motions the following facts as alleged in the Complaint. [Docket Item 1.]

Plaintiff Product Source International, LLC ("PSI") is a limited liability corporation with its headquarters in New Jersey. (Compl. ¶ 6.) Plaintiff purchased an insurance policy with Maryland Casualty Company in 2007 and renewed that policy yearly. (Id. ¶ 14.) Foremost Signature Insurance Company underwrote the renewal term of that insurance policy effective from February 16, 2014 through February 16, 2015. (Id. ¶ 15.)

The Foremost Commercial General Liability policy includes a $2,000,000 "per occurrence limit of liability" and a $4,000,000 general aggregate limit. (Id.) Farmers Insurance Exchange manages all claims for Maryland Casualty Company and Foremost Signature Insurance Company (collectively, the "Insurers"). (Id. ¶ 16.)

Plaintiff's insurance policies provide "general commercial liability . . . subject to certain conditions and exclusions." (Id. ¶ 24.) Those exclusions do not apply to "claims sounding in infringement of trade dress or slogan." (Id. ¶ 43.) Plaintiff alleges that its insurance policies cover "personal and advertising injuries" (id. ¶ 41), including "injury arising out of the use of another's advertising idea in an advertisement, or infringing upon another's trade dress or slogan in an advertisement." (Id. ¶ 42.)

Plaintiff sells, among other things, cigarette filter products. (Id. ¶ 10.) Those filters are sold in a white box with a blue background printed with the phrases "NIC OUT" and "LESS TAR – MORE TASTE." (Id. ¶ 11.) Plaintiff has been selling products with the "NIC OUT" phrase since at least March 2003. (Id. ¶ 12.) Plaintiff applied for a federal registration for the phrase NIC OUT in March 2006, which was granted on December 4, 2007 under U.S. Registration No. 3,350,041. (Id. ¶ 17.)

On June 23, 2009, Leonid Nahshin filed a Petition for Cancellation of Plaintiff's NIC OUT mark with the United States Patent and Trademark Office's Trademark Trial Appeal Board, asserting that he owned the mark. (Id. ¶ 18.) On June 21, 2013, the Trademark Trial Appeal Board granted Nahshin's petition to cancel Plaintiff's registration. (Id. ¶ 20.) Plaintiff appealed the Trademark Trial Appeal Board's ruling to the United States District Court, where the appeal was heard before the United States District Court for the Eastern District of Virginia (the "Nahshin Action"). (Id. ¶ 21.) Nahshin brought counterclaims against Plaintiff in that case, including a "false designation of origin" claim under the Lanham Act. (Id. ¶¶ 22, 45.)

Shortly thereafter, Plaintiff tendered a demand for defense to the counterclaims to the Insurers. (Id. ¶ 23.) The Insurers indicated that they were investigating the claims against Plaintiff, but on October 14, 2014, they sent a letter disclaiming coverage based on the claims for damages brought by Nahshin because Plaintiff had submitted no documentation that those claims were covered under its Commercial General Liability insurance policy. (Id. ¶¶ 25-27.) Plaintiff demanded that the Insurers withdraw their disclaimer of coverage for the Nahshin Action, explaining Nahshin's counterclaims further and asserting that the claims were covered under the insurance policies because the Insurers had no colorable basis for disputing that

4

use of the phrase NIC OUT "constituted the use of an advertising slogan" and because Nahshin's claims for damages were based on allegations of trade dress infringement. (Id. ¶¶ 28-29.) The Insurers then agreed on January 15, 2015 to provide a defense to Plaintiff in the Nahshin Action. (Id. ¶ 30.) Nonetheless, Plaintiff asserts that the Insurers have rejected any agreements as to compensation for legal costs. (Id. ¶ 32.)

On June 24, 2015, the United States District Court for the Eastern District of Virginia granted Nahshin summary judgment on his counterclaims concerning common law ownership of the phrase NIC OUT but did not grant Nahshin money damages. (Id. ¶ 34.) Plaintiff timely appealed the ruling to the Court of Appeals, and Nahshin filed a cross-appeal of the denial of damages. (Id. ¶¶ 37, 39.)[1]

On July 22, 2015, the Insurers informed Plaintiff that any duty to defend owed by the Insurers in the Nahshin Action "expired" when the District Court granted Nahshin's motion for summary judgment. (Id. ¶ 34.) The Insurers stated that "only a fraction" of the legal defense costs, "if any at all" were "potentially" covered by the policies. (Id. ¶ 35.) The Insurers then informed Plaintiff "that they believe that they have no

---

[1] Plaintiff represents that the Nahshin Action terminated on December 22, 2015, after the filing of this action; Plaintiff and Nahshin withdrew their cross-appeals after settling their dispute for an unidentified amount of money. (Pl. Opp. at 4.)

5

obligation to defend or indemnify their insured PSI under any policy." (Id. ¶ 36.)

Plaintiff filed this action in the Superior Court of New Jersey, Camden County, on October 27, 2015, bringing claims against the Insurers for declaratory judgments as to the Insurers' duty to defend and indemnify Plaintiff in the Nahshin Action, and for insurance bad faith in denial of coverage for the Nahshin Action. [Docket Item 1.] Defendants timely removed this case to the United States District Court and filed the instant motion to dismiss [Docket Item 8] which Plaintiff opposes. [Docket Item 16.] The Court will decide this motion without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

**1. Rule 12(b)(1)**

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) therefore enables a party, as here, to move to dismiss a complaint for lack of subject matter jurisdiction.

Article III of the United States Constitution requires that "an actual controversy must be extant at all stages of [the Court's] review, not merely at the time the complaint is filed."

6

Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 247 (3d Cir. 2013) (quoting Genesis Healthcare Corp. v. Symczyk, ___ U.S. ___, 133 S.Ct. 1523, 1528 (2013)). With respect to actions for declaratory judgment, litigants present a justiciable controversy only where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

Two corollaries to the requirement for a live controversy are the doctrines of mootness and ripeness. "An action is rendered moot when an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during the litigation." Id. A case becomes constitutionally moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." In re ICL Holding Co., Inc., 802 F.3d 547, 553 (3d Cir. 2015) (citing Chafin v. Chafin, ___ U.S. ___, 133 S.Ct. 1017, 1023 (2013)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Campbell-Ewald Co. v. Gomez, ___ U.S. ___, 136 S.Ct. 663, 669 (2016). At the same time, the parties must present an actual

7

controversy that is ripe for review, or an issue that is fit for judicial resolution. Pic-a-State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 (3d Cir. 1996) (discussing Abbott Lab. V. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds). "The judicial power does not extend to hypothetical disputes, and federal courts may not give opinions advising what the law would be upon a hypothetical state of facts." Williams v. BASF Catalysts LLC, 765 F.3d 306, 327 (3d Cir. 2014) (citing Chafin, 133 S.Ct. at 1023). In other words, a case is moot where there is no conflict between the parties for the court to adjudicate; a case is unripe when that conflict does not yet exist. In either case, "the case or disputed claim presents no article III case or controversy, and a federal court lacks jurisdiction to hear it." Krys v. Aaron, 106 F. Supp. 3d 492, 500 (D.N.J. 2015) (citing Mollett v. Leicth, 511 Fed. Appx. 172, 173 (3d Cir. 203)).

**2. Rule 12(b)(6)**

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed

8

factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

**IV. DISCUSSION**

    **1. Count I**

First, Defendants seek to dismiss Plaintiff's Count I for a declaratory judgment that the Insurers owe a duty to defend Plaintiff in the Nahshin Action on the grounds that this claim is moot, and thus the Court lacks subject matter jurisdiction over this claim for relief. In Count I, Plaintiff seeks "a

9

judgment from this Court declaring that the Insurers have a duty to defend PSI in the Nahshin Action." (Compl. ¶ 54.)

The gravamen of Plaintiff's Complaint is that Defendants have made inconsistent representations to Plaintiff about their willingness and obligation to defend Plaintiff in the Nahshin Action; Plaintiff alleges that the Insurers have both acknowledged this duty (id. at ¶¶ 30, 53) and disclaimed it (id. ¶¶ 34-36) and that no payments have been forthcoming since January 15, 2015. (Id. ¶ 30.) Defendants claim that because they agreed in writing to "provide a defense to PSI" in the Nahshin Action, Plaintiff is seeking a declaration on a moot conflict and thus the Court lacks jurisdiction over this request (Def. Br. at 5); Plaintiff argues that it has stated a justiciable claim because its Insurers have effectively denied its claim for lack of coverage. (Pl. Opp. at 10-13.)

The Court disagrees with Defendants' position that this dispute is moot. Despite an earlier acknowledgement of the Insurers' duty to defend Plaintiff in the Nahshin Action, Defendants' inconsistent conduct leaves Plaintiff with a remaining personal stake in the answer to this question. If the Insurers must defend Plaintiff in the Nahshin Action, money will be forthcoming to defray the costs of litigation; if the Insurers have no such duty, as their conduct suggests they believe, then Plaintiff will have to shoulder that burden alone.

10

As alleged in the Complaint, this dispute meets the Supreme Court's description of a justiciable claim for declaratory judgment: here, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of" a declaration of the parties' relative rights. MedImmune, 549 U.S. at 127. Accordingly, the Court will deny Defendants' motion to dismiss Count I.

### 2. Count II

Second, Defendants seek to dismiss Plaintiff's Count II for a declaratory judgment that the Insurers owe a duty to indemnify Plaintiff in the Nahshin Action on the grounds that this claim is both moot and unripe, and thus the Court lacks subject matter jurisdiction over this claim for relief. In Count II, Plaintiff seeks "a judgment from this Court declaring that the Insurers have a duty to defend PSI for any judgment entered or settlement reached in the Nahshin Action." (Compl. ¶ 57.) The crux of Defendant's motion to dismiss as to Count II is whether the Complaint alleges that this duty to indemnify Plaintiff is ongoing -- in other words, whether Plaintiff seeks to enforce a duty that is neither extinguished nor premature.

Plaintiff alleges that it "has been informed by Nahshin that Nahshin would continue to seek damages compensation from PSI," and that both Plaintiff and Nahshin have already filed

11

cross-appeals of the Eastern District of Virginia's rulings as of the filing of this action on October 27, 2015. (Compl. ¶¶ 37- 39.) Plaintiff alleges that "the policies obligate the Insurers to defend PSI in the <u>ongoing action</u> with Nahshin and pay any judgment or settlement that may result." (Id. ¶ 49 (emphasis added).) Assuming the truth of both of these statements, the Nahshin Action is still ongoing and not "resolved" as Defendants claim. (See Def. Br. at 7.) Nor is an appeal in that case so remote or contingent as to render any continuing duty to indemnify Plaintiff for a judgment or settlement unripe for adjudication. (See id. at 8.)[2] Accordingly, Plaintiff has set forth a justiciable controversy over Defendants' duty to indemnify Plaintiff in the Nahshin action and the Court will deny Defendants' motion to dismiss Count II.

### 3. Count III

Finally, Defendants argue that Plaintiff's Count III for insurers' bad faith must be dismissed as the Complaint fails to state a claim for relief. Insurance companies owe a duty of good

---

[2] Defendants' contention that "there are no allegations" in the Complaint that Nahshin has appealed the denial of damages misrepresents Plaintiff's Complaint. The Complaint plainly alleges that both Nahshin and Plaintiff have cross-appealed the District Court's rulings to the United States Court of Appeals for the Fourth Circuit. (Compl. ¶¶ 37, 39). Defendants' entire argument as to Count II is remarkable in its ungrounded assertion that the Nahshin Action, though the subject of a pending appeal, is somehow "resolved." Not surprisingly, Defendants cite no support for this proposition.

12

faith to their insured in processing first-party claims, or claims brought by the insured against their insurance company to pay claims covered by their policy. Pickett v. Lloyd's, 621 A.2d 445, 450 (N.J. 1993); see also N.J.S.A. 17B:33-8. In Count III, Plaintiff asserts that Defendant breached this duty of good faith by delaying its investigation into and denying insurance coverage for the claims Plaintiff defended against in the Nahshin Action.

Under New Jersey law, "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis in denying the claim." Pickett, 621 A.2d at 453 (citing Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)). In other words, an insurance company cannot be liable for bad faith where there is a "reasonable basis for denying benefits," or where eligibility for coverage under the insurance policy is "fairly debatable." Id. Under this "fairly debatable" standard, a plaintiff can only succeed on a bad faith claim against his insurer if he can establish that he would be entitled to summary judgment on the underlying claim -- that there are no factual issues over whether the plaintiff is entitled to insurance coverage under his policy. Id.; see also Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397, 401 (D.N.J. 2000) ("If factual issues exist as to

13

the underlying claim (i.e., questions of fact as to whether plaintiff is entitled to insurance benefits – plaintiff's first cause of action), the Court must dismiss plaintiff's second cause of action – the 'bad faith' claim.").

Plaintiff alleges in the Complaint that its insurance policies "provide commercial general liability . . . subject to certain conditions and exclusions" and that the counter-claims brought by Nahshin against Plaintiff in the Nahshin Action fall within that coverage. (Id. ¶ 24, 40.) Specifically, Plaintiff alleges that "[t]he Nahshin allegations fall within one or more of the offenses under the definition of 'personal and advertising injury' under the policies issued by the Insurers to PSI." (Id. ¶¶ 41, 44.) In particular, Plaintiff points to "Coverage B at paragraph 14" and "Endorsement 9S 2102 Ed. 6-01, entitled Electronic Data Liability Amendment Endorsement" as provisions of their insurance policies which cover the trademark infringement claims in the Nahshin Action. (Id. ¶¶ 42-43.)[3] Plaintiff further alleges that Defendants, after agreeing in January 2015 to provide a defense in the Nahshin Action, "state

---

[3] As with Count II, Defendants blatantly mischaracterize Plaintiff's allegations. Defendants take the position that the Complaint "is silent as to whether trademark infringement is eligible for coverage under the policy" (Def. Br. at 11), but Plaintiff has clearly alleged that Nahshin's allegations against Plaintiff fall within the definition of covered legal claims under its policies. (Compl. ¶¶ 41, 44.)

14

that only 'a fraction' of PSI's legal defense costs . . . 'if any at all,' were 'potentially' covered by Insurers" and now assert "that they believe that they have no obligation to defend or indemnify their insured PSI under any policy." (Id. ¶¶ 30, 35, 36.)

Plaintiff has plainly alleged that Defendants lacked a reasonable basis for denying to defend and indemnify Plaintiff: the Complaint states that the insurance policies in question had specific provisions which covered the trademark infringement claims in the Nahshin Action.[4] But Plaintiff has not adequately set forth the second element required under Plunkett, Defendants' knowledge or reckless disregard for the fact that they had no reasonable basis for their denial of insurance benefits. While Plaintiff alleges in the Complaint that Defendants have "delayed the processing of the claim knowingly or in reckless disregard of the fact that they had no valid reason for doing so," (id. ¶¶ 62-63), this amounts to no more than a legal conclusion which this Court need not accept as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, this Court will grant Defendants' motion to dismiss as to Count

---

[4] In finding that this element has been adequately pleaded in the Complaint, the Court expresses no opinion on the merits of these allegations, or whether Plaintiff could actually establish on summary judgment that no factual issues exist as to its entitlement to insurance benefits under these policies.

III of the Complaint. This dismissal will operate without prejudice to Plaintiff's right to amend its pleadings to cure this deficiency. While Defendants assert that any amendment would be futile, the Court will not assume that Plaintiffs cannot set forth more developed factual as to Count III, and the Court grants Plaintiff a period of 21 days to file an Amended Complaint curing the deficiency, if Plaintiff is able to do so consistent with counsel's obligations under Rule 11, Fed. R. Civ. P.

### V. CONCLUSION

An accompanying Order will be entered.


 **June 30, 2016**                                    **s/ Jerome B. Simandle**
Date                                                  JEROME B. SIMANDLE
                                                      Chief U.S. District Judge